Arthur HOLLANDER, Plaintiff,

v.

AMERICAN CYANAMID COMPANY,
Defendant.

No. CIV. B–85–481 (WWE).

United States District Court,
D. Connecticut.

March 10, 1998.

*RULING ON PENDING MOTIONS*

EGINTON, Senior District Judge.

Plaintiff, Arthur Hollander, brought this action against his former employer, defendant American Cyanamid Company ("Cyanamid"), asserting claims for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, retaliation and tortious interference with a business expectancy. On March 23, 1989, this court granted summary judgment in favor of defendant as to plaintiff's claims for age discrimination and retaliation. On appeal, the Second Circuit vacated that ruling in part, on the narrow finding that this court erred in not permitting plaintiff to discover information regarding management-level Cyanamid employees who were over the age of 40 when their employment with Cyanamid terminated. The appellate court affirmed this court's conclusion as to plaintiff's retaliation claim, and did not preclude a later finding of summary judgment for defendant once the additional discovery had been completed. *Hollander v. American Cyanamid,* 895 F.2d 80 (2d Cir.1990).

Discovery now being complete, defendant again moves this court for summary judgment as to plaintiff's remaining claims.[1] Defendant also court to strike certain portions of the Affidavit of Arthur Hollander, which was submitted in support of plaintiff's Memorandum in Opposition to Defendant's Motion For Summary Judgment.

For the reasons set forth below, defendant's Motion to Strike will be granted in part and denied in part. Defendant's Motion for Summary Judgment will be granted as to plaintiff's ADEA claim, and plaintiff's pendent claim for tortious interference with a business expectancy will be dismissed.

Patrick J. Monaghan, Jr. and Mark F. Heinze of Monaghan, Rem and Zeller, P.C., Hackensack, NJ, for Plaintiff.

Albert Zakarian of Day, Berry and Howard, Hartford, CT, for Defendant.

*I. BACKGROUND*

Plaintiff began his employment with Cyanamid in 1956, but left the company in 1960 to

---

1. Discovery in this case has been copious. For instance, after the Second Circuit ruling in this case, plaintiff was permitted to serve defendant with several additional interrogatories and requests for production. In addition, after defendants filed the instant motion for summary judgment, plaintiff was permitted to conduct additional company-wide discovery, not limited to terminated employees.

pursue other employment. In 1973, at the age of 47, plaintiff returned to Cyanamid, and was appointed Manager of Management Engineering for Cyanamid's Lederle facility in Pearl River, New York. Upon his re-employment with defendant, plaintiff entered into an Employment Agreement which pro-hibited him from removing or disclosing Cyanamid's confidential material without Cyanamid's consent.

Cyanamid appears to have been satisfied, and even impressed, with plaintiff's intellec-tual and creative abilities as Manager of Management Engineering. From 1973 to 1980 plaintiff regularly received salary in-creases, bonuses and stock options. In addi-tion, Cyanamid's yearly progress reviews of plaintiff almost consistently gave him an overall rating of "excels in several major areas." Cyanamid often lauded plaintiff for his superior creativity, and noted as much in his performance reviews and in letters to plaintiff.

Starting as early as 1974, however, defen-dant began to chronicle certain alleged weak-nesses in plaintiff's interpersonal skills. For instance, in a progress review dated Novem-ber 15, 1974 Cyanamid noted that plaintiff had "created some antagonism by 'shooting from the hip.'" In plaintiff's October 26, 1976 progress review, Cyanamid stated that "improvement is needed in establishing a higher confidence with middle management and communicating on a level which they understand."

Plaintiff's November 1, 1977 review rated him as "needs improvement" in the category of communication. In that review, Cyanam-id also noted that plaintiff needed to be "less antagonistic." On November 30, 1978 defen-dant again rated plaintiff as "needs improve-ment" in communication and human rela-tions. His reviewer further noted that plaintiff still needed to improve "in following communications lines." That review also commented that "[t]he tendency to go over anyone who does not immediately respond must be changed."

In 1980 Cyanamid's perception of plain-tiff's interpersonal skills seemed to tempo-rarily improve. In plaintiff's January 9, 1980 review Cyanamid rated plaintiff as "consis-tently acceptable" in the categories of com-munication and human relations. Then, in 1981 Cyanamid transferred plaintiff to its Davis & Geck facility in Danbury, Connecti-cut, and appointed him Manager of Medical Devices.

On October 28, 1981 Cyanamid reverted to rating plaintiff as "needs improvement" in the category of human relations. In October, 1982 Cyanamid again rated plaintiff as "needs improvement" in communications and human relations. That review also noted that plaintiff needed to "overcome human relations problems," "improve written and verbal communications" and limit his commu-nication to "normal channels."

Finally, in October, 1983 plaintiff received a particularly scathing review. Plaintiff's su-pervisor, Robert Duckett, rated plaintiff as "needs improvement" in the areas of commu-nication, human relations, personnel develop-ment, leadership and organizing/staffing.[2] Moreover, Duckett commented:

> His major problem is a total lack of com-prehension of the vital necessity of proper-ly considering all of the appropriate func-tional groups which must be involved for successful completion and execution of complex projects. He leaves a "trail of wreckage" of interpersonal and interde-partmental relationships which eventually inhibit the success of the projects. He seems to ignore the vital "people function" almost completely, and doesn't compre-hend this effect. He operates like a "one man gang" which is not acceptable in a complex, multi-functional team oriented business.

On January 30, 1984 Cyanamid terminated plaintiff, giving him six month's severance pay. Plaintiff was 57 years old. There is some dispute between the parties as to who replaced plaintiff at Cyanamid. Defendant claims that it replaced Hollander with Rich-ard Augsbach, who is only eight months younger than plaintiff. Plaintiff claims that Augsbach was only a temporary "floating" replacement, and that Cyanamid actually re-

---

**2.** Even in this review, plaintiff received a rating of "superior" for his creativity.

placed him with Felix Esposito, whom Cyanamid appointed as Manager, Device Manufacturing one year after terminating plaintiff, and who was eleven years younger than plaintiff. It is undisputed, however, that Cyanamid did not eliminate plaintiff's job after his termination.

In October, 1984 plaintiff contacted Ethicon, Inc., one of defendant's competitors, seeking employment. Plaintiff offered to show Ethicon a film demonstrating the application of automation to suture manufacturing. The parties dispute whether this film contained propriety information belonging to Cyanamid. After interviewing plaintiff, Ethicon contacted Robert Duckett, plaintiff's former supervisor at Cyanamid, and reported plaintiff's proffer of the film. On October 22, 1984 Ethicon wrote to plaintiff stating that it would not offer him a position. On October 26, 1984 Cyanamid sent a letter to Hollander stating that his proffer of the film to Ethicon was violative of a non-competition clause in the Employment Agreement he had signed in 1973, and that Cyanamid intended to enforce that agreement.

Plaintiff brought this action on August 23, 1985, alleging an array of claims against Cyanamid. As noted, plaintiff's remaining claims are for violation of the ADEA and tortious interference with a business expectancy. On April 1, 1997, defendants filed the motion for summary judgment which is now before the court.

## II. ANALYSIS

### A. Standards for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding whether there are any factual issues to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987).

A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The initial burden is thus on the moving party to establish that no relevant facts are in dispute. The burden then shifts to the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for the fact-finder to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

### B. Motion to Strike

Plaintiff has submitted an affidavit in an attempt to establish the existence of a genuine issue for trial. Defendants have moved to strike portions of plaintiff's affidavit as not in compliance with Rule 56(e).

Rule 56(e), partially entitled "Form of Affidavits," requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence . . . ."

Accordingly, when portions of an affidavit do not comply with Rule 56(e), the trial judge is "free to disregard the inadmissible paragraphs and consider the rest of the affidavit." *United States v. Alessi*, 599 F.2d 513, 515 (2d Cir.1979). A court may therefore strike portions of affidavits which are not made upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements. *See, e.g., United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir.), *cert. denied, Ferrante v. United States*, 516 U.S. 806, 116 S.Ct. 50, 133 L.Ed.2d 15 (1995) (affidavit not made on personal knowledge will not suffice to create issue of fact precluding summary judgment); *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d

450, 454–55 (2d Cir.1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in the Rule 56(e) affidavit); *Weeks v. ARA Services,* 869 F.Supp. 194, 196 (S.D.N.Y.1994) (generalized and conclusory affidavits are insufficient to withstand defendant's motion for summary judgment). To the extent that a Rule 56(e) affidavit contains inadmissible hearsay which references other evidence that is properly before the court, the court may disregard the hearsay but separately consider the admissible evidence. *John Hancock Property and Casualty Insurance Co. v. Universale Reinsurance Co., Ltd.,* 147 F.R.D. 40, 45 (S.D.N.Y.1993).

Plaintiff's affidavit flagrantly disregards the requirements of Rule 56(e). This 30 page document is riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge. Plaintiff's affidavit more resembles an adversarial memorandum than a *bona fide* affidavit. Plaintiff, without citing law, has abused Rule 56(e) in an attempt to reiterate his legal and philosophical position. The court has been obliged to devote significant resources and time combing through plaintiff's voluminous affidavit to strike numerous offending portions.

The court will hereby strike the following portions of the "Affidavit of Arthur Hollander" because they contain inadmissible hearsay, generalized conclusory and argumentative statements, and/or information which could not be attributed to plaintiff's personal knowledge: the second sentence of paragraph 3; paragraph 4(a) beginning with "without pressure ...": paragraph 4(b)(iii) beginning with "which Cyanamid would ...": paragraph 4(b)(iv) beginning with "which belie ..."; paragraphs 5 & 9; paragraph 11 beginning with "Cyanamid's working records ..."; paragraph 18; paragraph 19 beginning with "[t]his claim is false ..."; paragraphs 20 & 22; paragraph 23 up to "first hand knowledge"; paragraph 24; the first sentence of paragraph 25; the first sentence of paragraph 27; the third sentence of paragraph 28; paragraph 29 through "hiring practices" and beginning again with "perhaps

..."; the second sentence of paragraph 32; paragraphs 33 & 34; paragraph 35 beginning with "[a]lthough I ..."; paragraph 36 up to "Cyanamid's defense ..."; the first sentence in paragraph 38; the second sentence in paragraph 39; paragraph 40 through "my response ..." and again beginning "and most importantly ..."; paragraphs 42 & 43; the last sentence in paragraph 45; the last sentence in paragraph 46; paragraph 54; the third sentence in paragraph 55; paragraph 56; the first and third sentences in paragraph 59; the last sentence in paragraph 60; the first and last sentences in paragraph 61; paragraph 62 not including the information in parenthesis; paragraphs 63—68, and 74—80.

The court has not stricken all of the portions that defendant requested to be stricken. To the extent that the court has stricken portions of plaintiff's affidavit which quote or paraphrase other evidence properly before the court, the court will separately consider that evidence.

### C. Age Discrimination

#### 1. Legal Standards

Plaintiff claims that Cyanamid violated the ADEA when it terminated his employment. Because plaintiff does not claim to have direct evidence that defendant discriminated against him because of his age, plaintiff must establish his claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Accordingly, plaintiff must initially establish a prima facie case of age discrimination. Plaintiff must establish his prima facie case by showing that (1) he was within the protected age group; (2) he was qualified for the job; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination. *Hollander,* 895 F.2d at 83. The burden of establishing a prima facie case is not an onerous one. *Sweeney v. Research Foundation of State University of New York,* 711 F.2d 1179, 1184 (2d Cir.1983).

If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, clear and specific nondiscrimina-

tory reason for discharging plaintiff. *Dister v. Continental Group Inc.*, 859 F.2d 1108, 1115 (2d Cir.1988). At this juncture, however, defendant need not prove the existence of a non-discriminatory reason for its action. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

If defendant successfully articulates a legitimate, non-discriminatory reason for discharging plaintiff, then plaintiff must establish both that defendant's articulated reason was false, and that discrimination was the real reason for its action. It is not enough for plaintiff to show that defendant's legitimate, non-discriminatory reason for its employment decision is pretextual. Plaintiff must also prove by a preponderance of the evidence that defendant's stated reason is a pretext for discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515–17, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 2. Plaintiff's Prima Facie Case

█ Cyanamid argues that the court should grant its motion for summary judgment because plaintiff has failed to establish a prima facie case. Specifically, Cyanamid asserts that it did not discharge plaintiff under circumstances giving rise to an inference of age discrimination. In support of its position, Cyanamid contends that it replaced plaintiff with Richard Augsbach, who is only eight months younger than plaintiff. Plaintiff alleges, however, that his real replacement was Felix Esposito, who was 11 years his junior, and who eventually replaced Augsbach.

This court has held before, and the Second Circuit has agreed, that "for purposes of ruling on the motion for summary judgment, Hollander has established his prima facie case." *Hollander*, 895 F.2d at 83. This court will therefore not revisit that issue.

### 3. Defendant's Legitimate, Non-discriminatory Reason

█ Plaintiff argues that summary judgment should not be entered as to his ADEA claim because defendant has failed to articulate with adequate specificity a legitimate, non-discriminatory reason for terminating him. Plaintiff contends that defendant is merely hurling epithets at plaintiff, and cannot cite specific examples of plaintiff's alleged interpersonal problems.

The Second Circuit has already held in this case that "the district court correctly found that American Cyanamid's burden of producing a legitimate, non-discriminatory explanation for the discharge was satisfied by its contention that Hollander's interpersonal difficulties necessitated his discharge." *Hollander, supra*, at 83.

Defendant has cited several progress reviews of plaintiff which chronicle Cyanamid's perception that plaintiff had interpersonal difficulties. Those reviews even allude to a specific interpersonal problem that defendant claims plaintiff displayed, which is his alleged failure to communicate through proper channels.

In addition, Cyanamid claims that plaintiff had such poor relationships with certain workers whom he supervised that he almost caused those workers to unionize. Cyanamid also claims that it had to remove plaintiff from a "skin stapler" project because of his alleged poor interpersonal skills. Certainly, at this stage, defendant has articulated with adequate specificity a legitimate, non-discriminatory reason for terminating plaintiff.

### 4. Pretext

At the heart of this case is whether, after being allowed to conduct protracted and vast discovery, plaintiff has provided evidence from which a reasonable jury could find in his favor. Such an inquiry is especially delicate because "employers rarely leave a paper trail—or 'smoking gun'—attesting to discriminatory intent." Accordingly, "disparate treatment plaintiffs often must build their cases with pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer." *Hollander*, 895 F.2d at 85. After a careful review of the evidence plaintiff has proffered, however, the court finds that as a matter of law no reasonable jury could

conclude that Cyanamid intentionally discriminated against Hollander because of his age.

#### a. *Plaintiff's Evidence of Pretext*

In essence, plaintiff's evidence falls into two categories. First, plaintiff attempts to undercut defendant's articulated non-discriminatory reason for discharging him by adducing evidence which he claims shows that Cyanamid's explanation is unworthy of belief, and therefore, a pretext for discrimination. Plaintiff essentially contends that there is a question of fact as to whether he actually had difficulties with interpersonal relationships, and whether the defendant's critiques of him were part of a plan to discriminate against him because of his age.

In support of his position, plaintiff has compiled affidavits of former co-workers who attest that he was, in fact, quite affable. Additionally, plaintiff presents to the court affidavits which indicate that plaintiff may not have been actually responsible for the alleged "union incident" or for an alleged "safety incident" for which defendant blames him. Plaintiff also points to evidence already in the record, such as his overall good track record with Cyanamid which included bonuses, raises, and overall positive reviews.

Plaintiff stresses the fact that Robert Duckett, when asked in his deposition to recount specific events leading to his scathing October, 1983 review of plaintiff, cannot remember a single occurrence. Plaintiff also complains that a good deal of defendant's defense is based on inadmissible hearsay, name-calling, innuendo and reputation evidence. As plaintiff puts it, "defendant does not contend that plaintiff was terminated because he had a bad reputation." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 12.

This court agrees with plaintiff that his evidence may in fact raise some doubt as to whether defendant's articulated reason for discharging him is believable. Certainly, in some situations,

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) *may*, together with the ele-

ments of the prima facie case, suffice to show intentional discrimination.

*St. Mary's Honor Center,* 509 U.S. at 511 (emphasis added).

In an important Second Circuit en banc decision the appellate court explained, however, that "a finding of pretext, together with the evidence comprising a prima facie case, is not *always* sufficient to sustain an ultimate finding of intentional discrimination." *Fisher v. Vassar College,* 114 F.3d 1332, 1338 (2d Cir.1997) (en banc) (emphasis added) (hereinafter "*Fisher II*"); *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998); *affirming Fisher v. Vassar College,* 70 F.3d 1420, 1437 (2d Cir.1995) (hereinafter "*Fisher I*").

In that case, Fisher asserted claims for Title VII and age discrimination after having been denied tenure by her former employer, Vassar College. Fisher attempted to show that Vassar's reason for not granting her tenure was actually a pretext for discrimination. Specifically, Fisher adduced evidence which indicated that her scholarship, teaching, service and leadership were actually better than Vassar had claimed. *Fisher II* at 1334. She buttressed this assertion with, *inter alia,* previous favorable reviews, some of which contradicted certain of Vassar's reasons for denying her tenure. *Fisher I* at 1434–36.

Notwithstanding this evidence, the Second Circuit affirmed en banc a Second Circuit panel decision holding that it was clear error for the fact finder to conclude that Vassar had discriminated against Fisher. *Fisher II* at 1345. The en banc majority opinion noted that

> discrimination does not lurk behind every inaccurate statement. Individual decision-makers may intentionally dissemble in order to hide a reason that is non-discriminatory but unbecoming or small minded .... In short, the fact that the proffered reason was false does not necessarily mean that the true motive was the illegal one argued by the plaintiff.

*Fisher II* at 1337–38. Accordingly, plaintiff may prevail only if he shows that Cyanamid's proffered reasons are a pretext for discrimi-

nation, "either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction—or both." *Fisher II* at 1339.

The court finds under the circumstances of this case that of the many possible reasons for Cyanamid's inconsistencies, illegal discrimination is no more likely a reason than any other. Moreover, as the court will discuss in Section II.C.4.b. *infra*, plaintiff cannot point to any other evidence which would support a finding of discrimination. The court thus finds that although plaintiff's evidence may cast some doubt on defendant's proffered reason, it does not permit the inference that defendant discriminated against plaintiff because of his age.[3] *See, Fisher II* at 1338.

#### b. Plaintiff's Statistical Evidence

The second category of plaintiff's evidence is comprised of statistics from which plaintiff argues a reasonable jury could infer that Cyanamid discriminated against him because of his age. Plaintiff first offers statistical evidence which analyzes whether age was a factor in Cyanamid's decisions to eliminate the jobs of certain management-level employees. These statistics were compiled by Dr. Marie Gaudard, Ph.D., who is a professor of statistics at the University of New Hampshire. Professor Gaudard's study concludes that "the pattern of 'job eliminated' terminations, while facially age neutral, disproportionately impacted older workers. To a high degree of statistical certainty, age had to be a determining factor in the 'job eliminated' terminations." Plaintiff's Appendix in Opposition to Defendants Motion for Summary Judgment, Vol. II at 190.

Plaintiff also offers his own independent statistical study of Cyanamid's "job eliminated" category, which concludes that in 26 instances, the jobs in question were not actual-ly eliminated. Rather, plaintiff asserts, a number of those whom Cyanamid classified as "job eliminated" were actually terminated because of their age and replaced by younger workers.

Plaintiff argues that his statistical evidence is "relevant in establishing the company-wide context for [his] termination, defeats the inference that his discharge was a mere error of business judgment, and establishes Cyanamid's practice of falsifying the reasons for large numbers of termination [sic]." Plaintiff's Memorandum In Opposition to Defendant's Motion for Summary Judgment at 9.

The theory plaintiff pursues in this case is one validated by the Second Circuit in *Fisher I*, 70 F.3d at 1442. Statistics may be a part of a plaintiff's efforts to establish discrimination under a theory of disparate treatment. Indeed, the appellate court vacated this court's original grant of summary judgment in order to afford plaintiff the opportunity to compile statistical evidence. The Second Circuit stated:

> Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive .... It is possible that Hollander's discovery request might uncover a pattern of older management employees leaving American Cyanamid under unexplained circumstances, which might help prove his claim that American Cyanamid's explanation for his discharge was pretextual.

*Hollander*, 895 F.2d at 84.

The appellate court's reasoning in *Hollander*, however, cannot be construed to mean that a proffer of any statistical evidence, no matter how unreliable, can defeat summary judgment in an age discrimination

---

**3.** The court also notes that plaintiff's evidence with regard to the veracity of defendant's proffered reason for his termination is actually less probative than certain evidence proffered by Fisher. For instance, although Hollander points out that his reviews were generally good, he can only point to one review in nearly a decade of employment which rates his interpersonal skills as acceptable. Furthermore, Hollander's affida-vit evidence of individuals who did not find him to be difficult to work with are not relevant to the issue of whether his supervisors believed him to have had poor interpersonal skills. Hollander can point to no evidence which would permit the inference that those supervisors who gave him poor evaluations regarding his interpersonal skills ever believed that his interpersonal skills were adequate. *See, Fisher I* at 1434–36.

case. In fact, that same court held in *Fisher I* that certain statistics are so flawed and unreliable that it is clear error for a fact finder to rely on them to infer discrimination. *Fisher I* at 1442–43.

■ For example, a plaintiff may not gerrymander data in order to achieve his desired results. *Id.* at 1443. *See also, Khan v. Grotnes Metalforming Systems, Inc.,* 679 F.Supp. 751, 760 (N.D.Ill.1988). A plaintiff in a disparate treatment case must also take into account nondiscriminatory explanations for numerical disparities. *See, e.g., Doan v. Seagate Technology, Inc.,* 82 F.3d 974, 979 (10th Cir.1996). Perhaps of greatest importance to a disparate treatment case, however, is the notion that plaintiff's statistics must be sufficient to prove that the particular plaintiff was among the individuals who were not treated neutrally. *Zahorik v. Cornell University,* 729 F.2d 85, 95 (2d Cir.1984).

■ Plaintiff's statistical evidence runs afoul of all of these requirements. Professor Gaudard's study, for instance, deals only with Cyanamid's management-level employees whom Cyanamid categorized as "job eliminated." Yet Cyanamid neither eliminated plaintiff's job nor categorized him as "job eliminated." Since plaintiff is not among the individuals Professor Gaudard included in her study, that study cannot provide the kind of particularized evidence relating to the individual plaintiff which is necessary to show discriminatory treatment. *Id.* at 95.

The fact that Gaudard confined her study to the category of those Cyanamid employees who were "job-eliminated" also prevents those statistics from revealing the type of "company-wide" practice that the Second Circuit contemplated. *Hollander* at 84. Accordingly, no reasonable jury could conclude from this gerrymandered data that Cyanamid discriminated against plaintiff because of his age. *See, e.g., Fisher I* at 1445–46 (clear error for fact-finder not to have considered university-wide statistics, in concluding that defendant had discriminated against plaintiff); *Khan,* 679 F.Supp. at 760 (any relevant statistics must be based upon the entire workforce).

■ Moreover, plaintiff's own independent study of the "job eliminated" category falls short of evidence from which a reasonable jury could infer that Cyanamid engaged in a company-wide practice of terminating older employees because of their age.

In conducting his study, plaintiff observed that in 26 instances, job titles identical or similar to those which Cyanamid claims it eliminated can still be found in Cyanamid's personnel directory. Plaintiff alleges that those surviving job titles appear to be within the same reporting structure as the supposedly eliminated jobs. Plaintiff also asserts that in roughly half of those 26 instances, significantly younger employees "replaced" those who were supposedly "job eliminated."

Yet plaintiff offers no evidence tending to show that what he deems "replacements" were, in fact, replacements. For instance, plaintiff does not proffer any evidence which would show that the so-called "replacements" actually preform the same functions and have the same responsibilities as the individuals whom Cyanamid allegedly mischaracterized as "job eliminated."

Moreover, plaintiff's study fails to account for the fact that of those 26, roughly half of the so-called "replacements" were aged forty or older. *See, e.g., O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (inference of discrimination cannot be drawn from the replacement of one worker with another insignificantly younger). Finally, plaintiff's study does not consider the possibility that even if Cyanamid did not eliminate those 26 jobs, it may have terminated those employees for non-discriminatory reasons. *See, Fisher I* at 1437–1438.

As plaintiff's survey stands, a jury would be left to speculate whether the 26 individuals were categorized as "job eliminated" because their jobs really were eliminated, because their jobs were not eliminated but they were terminated for nondiscriminatory reasons, or because Cyanamid discriminated against them because of their ages. Because speculation cannot suffice for evidence, the court finds that no reasonable jury could conclude from plaintiff's statistical evidence

that Cyanamid discriminated against plaintiff because of his age. *See, Doan* at 977.

## III. CONCLUSION

Plaintiff's Motion to Strike [doc. # 333] is GRANTED in part and DENIED in part, as set forth above in section II.B. Defendant's Motion for Summary Judgment [doc. # 315] is hereby GRANTED as to plaintiff's age discrimination claim. Because there is no remaining federal claim, plaintiff's pendent state claim for tortious interference with a business expectancy is DISMISSED. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).