Arlene COUSINS, Plaintiff,

v.

HOWELL CORPORATION, Defendant.

No. 3:98CV1945 (GLG).

United States District Court,
D. Connecticut.

Sept. 22, 2000.

Daniel H. Kryzanski, Stratford, CT, for Plaintiff.

Sheila Anne Denton, Adam J. Cohen, Pullman & Comley, Bridgeport, CT, for Defendant.

## OPINION

GOETTEL, District Judge.

Plaintiff, ARLENE COUSINS, has brought this employment discrimination suit against her former employer, HOWELL CORPORATION, for alleged violations of the federal Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). Plaintiff has also asserted a state-law claim for negligent misrepresentation. Defendant has moved for summary judgment on all counts of plaintiff's amended complaint [Doc. # 37]. For the reasons set forth below, defendant's motion will be GRANTED.

## BACKGROUND

The facts relevant to these claims are as follows: Defendant is a small manufacturer of electrical systems for hoists and cranes and, at all times relevant to this complaint, had just over 20 employees. In 1994, plaintiff was hired as a customer service representative[1] by defendant's then vice president, Robert Beale, who was in his late 60's. The two other principals of the company were in their 80's. Plaintiff was 52 years of age at the time she was hired. The company had only one other customer service representative, Anne Fox, who was in her late 50's.

Plaintiff worked in this capacity for over two years and had a very good performance record. Her job performance is not at issue in this case. She was an at-will employee, paid on an hourly basis, and worked 37 and one-half hours per week.

In June, 1996, plaintiff was diagnosed with gall bladder problems and was scheduled for gall bladder surgery the following month. She discussed with Beale (now president of the company) her need to take a week or so off for the surgery, which Beale readily agreed to. On July 1, 1996, following some preliminary procedures, plaintiff developed acute pancreatitis and other complications, which required emergency surgery and a prolonged hospitalization. At the time of the surgery, plaintiff was given only a 50/50 chance of surviving. Needless to say, plaintiff was out of work much longer than anyone had anticipated due to these unexpected complications.

Due to the various medical problems plaintiff experienced, her gall bladder surgery was not performed until January 1997. In April, 1997, plaintiff underwent another surgery to repair a hernia that had developed as a result of her first surgery. Plaintiff states that she was completely incapacitated and unable to work through April, 1997. The severity of plaintiff's illnesses and her inability to work during this period are undisputed.

Initially during plaintiff's absence, defendant's one other customer service representative, Anne Fox, filled in for plaintiff. Fox worked overtime and during her lunch hour to keep up with the work that

---

1. Plaintiff describes her job duties as taking orders over the phone, inputting orders into the computer, billing, troubleshooting over the phone, filing, and assembling catalogs. (Pl.'s dep. at 100).

had previously been performed by two customer service representatives. After approximately six weeks, Fox advised Beale that this was too much for her, and he hired Monica Steyer, age 32, on a temporary, part-time basis to fill in for plaintiff. Steyer was an independent contractor who was paid on an hourly basis for the hours she worked, which ranged from 12 to 35 hours per week. At the outset, Steyer was only to work for eight weeks, which Beale believed would cover the period of plaintiff's anticipated absence from work. However, when plaintiff remained unable to return to work, Beale asked Steyer to continue on a part-time basis until plaintiff's return.

In January, 1997, defendant's bookkeeper of over 20 years retired at the age of 64, and Fox was promoted to the position of bookkeeper. Due to a shortage in the customer service area and given the uncertainty as to when plaintiff would be able to return, Beale hired a replacement for Fox, Sandra Wagner, who was 43 years of age.

On March 17, 1997, after plaintiff had been out of work for eight and one-half months, defendant hired Steyer on a permanent, part-time basis to work as a customer service representative for up to 30 hours per week. Beale testified that he gave Steyer a permanent offer not to replace plaintiff but because he needed the help. (Beale dep. at 70). It is undisputed that, as of March, 1997, plaintiff was still unable to work, and it was uncertain how much longer plaintiff would be out of work.

In early April, 1997, prior to her last surgery, plaintiff spoke with Beale about returning to work on a part-time basis. Beale told plaintiff to call him after her surgery on April 10th and after she had a sufficient recovery to let him know when she would be able to return to work. (Pl.'s dep. at 61). Plaintiff states that, at that point, neither she nor her husband were advised that Steyer had been hired on a permanent basis. (Pl.'s dep. at 61, 63).

On April 30, 1997, plaintiff called Howell Corporation and spoke with Fox. She told Fox that she would be able to return to work as of May 12th on a part-time basis. Fox advised her that she would need to speak with Beale who was on vacation. (Pl.'s dep. at 62, 63). Plaintiff states that she was not feeling one hundred percent physically but she was anxious to return to work and her doctor had released her to return to work as of May 12th. (Pl.'s dep. at 62, 70).

When Beale returned the first week of May, plaintiff spoke with him about returning to work part-time as of May 12th and easing into a full-time position thereafter. (Pl.'s dep. at 70). Beale, now 71 years of age, told plaintiff that Steyer was working from 9:00 to 3:00 and that he would have to work something out. *Id.* They discussed dividing hours but did not reach a firm agreement. Beale was to call her once he had made arrangements for her return. (Pl.'s dep. at 71, 79).

■ Plaintiff testified in her deposition that, at this point in time, she was fully able to do the same work that she had done before. (Pl.'s dep. at 75). She could care for herself in terms of her everyday activities. She had fully recovered from her surgeries and was not limited in any way. (Pl.'s dep. at 111, 112).[2] Plaintiff testified that she requested part-time work until she could get her strength back. She considered herself to be 95% recovered at that point. (Pl.'s dep. at 114).

---

2. In her affidavit filed in opposition to the motion for summary judgment, plaintiff states that from April 1997 to October 1997, her physical problems precluded her from performing any jobs that required significant or strenuous physical duties or jobs that would not permit her prolonged rest periods. (Pl.'s Aff. ¶ 14). These inconsistencies in plaintiff's testimony need not detain us for a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts that party's previous deposition testimony. *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996).

When plaintiff did not hear back from Beale, on June 5, 1997, she sent him a certified letter again expressing her desire to return to part-time work. (Pl.'s dep. at 80). On June 13, 1997, Beale responded by letter, which stated in relevant part:

THE ONLY THING I CAN OFFER YOU IS THREE HOURS A DAY (9:00 A.M.–12:00 P.M.) TO BE PAID ON AN HOURLY BASIS. THE WORK AVAILABLE WOULD BE FILING, PUTTING CATALOGS TOGETHER, ANSWERING PHONES AS A BACK–UP TO MONICA AND SANDY.

Plaintiff characterizes his offer as a filing clerk position.[3] Defendant disagrees with plaintiff's characterization of the job and claims that this part-time position offered was the same as plaintiff had previously held, except it was of shorter duration and some of the afternoon functions, such as billing, would not be handled by plaintiff. On June 20, 1997, plaintiff met with Beale and told him that his offer was unacceptable. (Pl.'s dep. at 103). She considered the position to be a demotion. *Id.* According to plaintiff, Beale responded that it was all that he could do because he was in a pinch since he had hired Monica. Plaintiff felt that her only option was to "take it or leave it." *Id.*

After plaintiff declined Beale's offer, she asked him to give her a layoff slip (a "pink slip") so that she could collect unemployment compensation. (Pl.'s dep. at 103, 105). Beale complied with her request and gave her a pink slip. *Id.* Plaintiff did not think that she had been fired. (Pl.'s dep. at 105). Plaintiff then filed for unemployment compensation and collected approximately $8,500. (Pl.'s dep. at 131).

Throughout plaintiff's medical ordeal, on a weekly basis, plaintiff or her husband spoke with Beale or other employees of defendant, who expressed their concerns for plaintiff's health and well-being. Plain-

tiff and her husband testified that Beale repeatedly assured them that plaintiff's job would be waiting for her when she was well enough to return. (Pl.'s dep. at 53, 54, 58; Robert Cousins' dep. at 28). Defendant denies that Beale promised to keep her position open. Although Beale denies that he made these express promises, he testified that plaintiff's job remained open to her until she requested the pink slip on June 20, 1997. (Beale dep. at 70).

## DISCUSSION

### Summary Judgment Standard

The general principles applicable to summary judgment motions are well-settled. Under Rule 56(c), Fed.R.Civ.P., summary judgment shall be rendered forthwith "if the pleadings, depositions, [and] answers to interrogatories ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." The burden of showing that there is no genuine factual dispute rests upon the moving party. *See Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). In assessing the record to determine if such issues exist, we are required to resolve all ambiguities in favor of the party against whom summary judgment is sought and to draw all permissible inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This remedy, which precludes a trial, is properly granted only when no rational jury could find in favor of the non-moving party. *Carlton v. Mystic Transportation, Inc.*, 202 F.3d 129, 133 (2d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000). In employment discrimination cases, the Second Circuit has cautioned that district courts

---

**3.** The fact that plaintiff would be paid on an hourly basis did not influence her decision not to accept this offer, since she was always paid on an hourly basis. Rather, plaintiff's concern focused on the job duties and Beale's characterization of her position as "a back-up."

"must be cautious about granting summary judgment to an employer when ... its intent is at issue," *Gallo*, 22 F.3d at 1224, which, of course, is usually the case.

## I. Plaintiff's Age Discrimination Claim

Plaintiff's first claim is for age discrimination under the ADEA. Defendant asserts that it is entitled to summary judgment because the undisputed facts establish that plaintiff was never terminated; instead, she simply quit. Further, even assuming that she was terminated, the termination was done by a man in his 70's, the same person who hired plaintiff, thus entitling defendant to the "same actor" inference. Finally, defendant argues that the only evidence supporting plaintiff's claim is the fact that plaintiff was replaced by a younger worker, which fact, defendant asserts, is insufficient to raise a triable issue of age discrimination.

■ Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA covers the class of individuals like plaintiff who are over the age of 40. 29 U.S.C. § 631(a). In a disparate treatment case such as this, liability depends on whether the protected trait, age, actually motivated the employer's decision. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 607, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). "That is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Products, Inc.*, —— U.S. ——, 120 S.Ct.

2097, 2105, 147 L.Ed.2d 105 (2000) (internal citations and quotations omitted).

The evidentiary framework for proving age discrimination is the same as that for proving discrimination under Title VII. *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir.1997). Thus, we follow the three-step, burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Defendant's initial argument is addressed to plaintiff's prima facie burden, which requires plaintiff to show that she was subjected to an adverse employment action under circumstances giving rise to an inference of age discrimination. *See Brennan v. Metropolitan Opera Association, Inc.*, 192 F.3d 310, 316 (2d Cir. 1999). Defendant claims that plaintiff has failed to carry this burden because she was neither discharged nor terminated by defendant.[4] While many cases discuss a plaintiff's prima facie burden in terms of requiring the plaintiff to show that he or she was discharged, *see, e.g., Carlton v. Mystic Transportation*, 202 F.3d at 134; *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 399, 145 L.Ed.2d 311 (1999), this phraseology undoubtedly reflects the factual context of the particular case. The ADEA does limit actionable age discrimination claims to cases of discharge or termination. Rather, it speaks in terms of a refusal to hire *or* discharge or *"otherwise discriminate* ... with respect to ... compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1) (emphasis added). Thus, the issue as presented by defendant is drawn too narrowly.

Plaintiff asserts that she was subjected to an adverse employment action when

---

**4.** In its reply papers, defendant argues that plaintiff also cannot prove that she was constructively discharged. Plaintiff, however, does not argue that defendant made her working conditions so intolerable that she was forced to resign—that is, that she was constructively discharged. She relies instead on the fact that a replacement was hired and that she was demoted (at least, this is what she perceived).

Steyer was hired as her replacement in March, 1997, and when plaintiff was offered a part-time job with fewer job responsibilities in June, 1997, which she viewed as a demotion.[5] The parties spend a great deal of time on this issue in their briefs and supporting documents. There clearly are factual issues in this regard. Because we are required to resolve all ambiguities in plaintiff's favor, we assume for purposes of this summary judgment motion that plaintiff was subjected to adverse employment actions by defendant and that plaintiff has met her minimal burden of establishing a prima facie case of age discrimination. *See Fagan v. New York State Electric & Gas Co.,* 186 F.3d 127, 132 (2d Cir.1999).

The burden now shifts to defendant to articulate a legitimate, non-discriminatory reason for its actions. Defendant points to the fact that plaintiff had been out of work for an extended period of time, that the one other customer service representative could not handle both jobs, and that additional help was needed, thus necessitating the hiring of Steyer on a permanent, part-time basis. This is what is often referred to as the business necessity defense.

The burden then shifts to the plaintiff to offer proof that the proffered reason was not the true reason for the adverse action but was a pretext for age discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff does not challenge defendant's need for a replacement during the period of her absence. Instead, she argues that defendant's reasons are "clearly pretextual" because the evidence shows that plaintiff and her husband were not told of Steyer's permanent hire and, once plaintiff began making arrangements to return to her former position, Beale deliberately avoided her.

As the en banc majority noted in *Fisher v. Vassar College,* 114 F.3d 1332, 1339 (2d Cir.1997), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998),[6] "discrimination does not lurk behind every inaccurate statement."

> Individual decision-makers may intentionally dissemble in order to hide a reason that is non-discriminatory but unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility.... In short, the fact that the proffered reason was false does not necessarily mean that the true motive was the illegal one argued by the plaintiff.

*Id.* at 1337–38.

In this case, the fact that Beale may have been avoiding plaintiff does not logically lead to the conclusion that the real reason for his decision to hire a younger replacement was plaintiff's age. Plaintiff had been out of work for eight and one-half months. She was still unable to work. Beale had a business to run and he did not know when, or if, she would be returning to work. Likewise, Beale's delay in responding to plaintiff request to return on a

---

**5.** Although plaintiff does not characterize this case as a failure to rehire case, it could be considered as such, which could constitute an adverse employment action. *See In re Leslie Fay Cos.,* 212 B.R. 747, 777 (Bankr.S.D.N.Y. 1997), *aff'd,* 222 B.R. 718 (S.D.N.Y.1998), *aff'd,* 182 F.3d 899 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 788, 145 L.Ed.2d 665 (2000).

**6.** The Supreme Court in *Reeves v. Sanderson Plumbing Products, Inc.,* —— U.S. ——, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000), recently clarified plaintiff's burden at this stage. The Court held that in some cases the plaintiff's prima facie case, combined with sufficient evidence that the employee's asserted justification for its actions is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. A plaintiff does not always have to introduce "additional, independent evidence of discrimination." *Id.* "That is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability." *Id.* (original emphasis). However, the final burden is on the plaintiff to show the employer intentionally discriminated against her because of her age. *See Id.* —— U.S. ——, 120 S.Ct. at 2108.

part-time basis does not in any way suggest that his stated reason was a pretext for discrimination. Beale had been on vacation for the previous two weeks and stated that he was very busy with a backlog of work. Beale also may have wanted to postpone what he viewed as a difficult decision or an awkward meeting; he may have felt badly about his decision in light of plaintiff's lengthy convalescence; or, he may not have been avoiding plaintiff at all. Plaintiff testified that Beale was in an awkward position because "all along he kept telling me that my job would be there for me, that their main concern was that I recover, get better and when I was ready to be back to work, I would have a position … Now he hired someone else and there was no need to have me go back to that position." (Pl.'s dep. at 106).

■ Further, as defendant argues, it is entitled to an inference in its favor based on the fact that Beale, who was over 70, was the person who hired and "fired" plaintiff, who was over 40 when hired. This is what the courts have characterized as the "same actor" inference.[7]

■ There simply is nothing in the record to suggest that plaintiff's age played any role whatsoever in the employment decisions that Beale made. As the Supreme Court stated in *Hazen Paper*, 507 U.S. at 609, 113 S.Ct. 1701, a "disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in [the decisionmaking] process and had a determinative influence on the outcome." Plaintiff has failed to offer even a scintilla of evidence to support her claim that Beale's decisions were based

upon her age, other than the admitted fact that Steyer was significantly younger than plaintiff. The courts have reiterated time and again that the replacement of an older worker with a younger worker does not itself prove unlawful discrimination. *Fagan*, 186 F.3d at 134; *Hollander*, 172 F.3d at 199, n. 3; *Futrell v. J.I. Case*, 38 F.3d 342, 348 (7th Cir.1994) ("Typically, younger workers will replace older ones; this is an unremarkable phenomenon that does not, in and of itself, prove discrimination."). Therefore, we find no triable issue of fact that Beale or any other person on behalf of defendant discriminated against plaintiff because of her age and GRANT summary judgment in favor of defendant on count one of plaintiff's amended complaint.

## II. Plaintiff's Disability Discrimination Claim

Plaintiff's second claim is brought under the ADA, which prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability. Specifically, it provides that

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or

---

7. "When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." *Carlton v. Mystic Transportation*, 202 F.3d at 137 (internal citations and quotations omitted). A strong inference that age was *not* a motivating factor may be drawn when the termination occurs within a relatively short period of time after the hiring. *Id.* at 137–38(citing cases). However, the inference is less compelling when a significant period of time has elapsed between the hiring and firing. *Id.* at 138. Although three years between hiring and firing is somewhat longer than the period for which a strong inference usually lies, an inference of non-discrimination may still be drawn in this case, although not as strong as it would have been had the period been shorter. Of course, an added factor in defendant's favor is that the person doing the hiring and "firing" was in his late 60's and then early 70's.

without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In turn, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Accordingly, to fall within this definition one must have an actual disability, have a record of a disability, or be regarded as having a disability.

Plaintiff's disability discrimination claim focuses on two separate actions of defendant. First, plaintiff alleges that between July 1, 1996, and April, 1997, while she was completely disabled and unable to work, defendant hired Steyer on a permanent basis to replace plaintiff. Second, plaintiff alleges that in June, 1997, defendant perceived her to be substantially disabled and discriminated against her on the basis of that perceived disability by terminating her, refusing to reinstate her, and failing to hold her position open because of her disability.

Defendant argues that it is entitled to summary judgment on plaintiff's ADA claim because plaintiff was not a "qualified individual with a disability" within the meaning of the ADA.[8] Moreover, defendant asserts, that to the extent that plaintiff requested an accommodation (part-time work), defendant complied with that request. In addressing this argument we must consider plaintiff's disability status at two points in time: on March 17, 1997, when Steyer was hired on a permanent basis and, on June 20, 1997, when plaintiff was given the part-time offer by Beale, which for purposes of this motion we will assume was a demotion. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119

S.Ct. 2139, 2146, 144 L.Ed.2d 450 (1999) (holding that the ADA is properly read as requiring that a person be *presently* substantially limited in order to demonstrate a disability).

### A. Was Plaintiff Otherwise Qualified in March of 1997

As part of plaintiff's prima facie case, plaintiff must show that she was a qualified individual with a disability, as that phrase is defined by the ADA, at the time of the adverse employment action. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir.1998). The regulations set forth a two-pronged test that must be applied. First, plaintiff must have the requisite skill, experience, education, and other job-related requirements of the job. 29 C.F.R. § 1630.2(m). That is not at issue here. Second, the plaintiff must show that she can perform the essential elements of the position with or without reasonable accommodation. *Id.; Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149–50 (2d Cir.1998); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.), *cert. denied*, 524 U.S. 911, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998).

It is undisputed that, as of March, 1997, plaintiff was physically unable to perform her job as a customer service representative. She describes herself as totally incapacitated, and defendant does not dispute that claim. Defendant argues that plaintiff has failed to show that she was able to perform the essential functions of the job in spite of her disability with a reasonable accommodation.

■■ Plaintiff has failed to suggest any accommodation that could have been offered by her employer in March, 1997, that would have made this possible. The ADA does not require employers to retain dis-

---

**8.** Defendant once again raises the argument that plaintiff was not terminated and, therefore, defendant could not have violated the ADA. As under the ADEA, adverse employment actions giving rise to an actionable discrimination claim under the ADA encompass far more than just terminations. Indeed, under the ADA, an employer's failure to provide a reasonable accommodation may constitute discrimination. *See* 42 U.S.C. § 12112(b)(5)(A).

abled employees who cannot perform the essential functions of their jobs with or without reasonable accommodation. *Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 649 (1st Cir.2000). Although in some instances, providing medical leave has been held to be a reasonable accommodation required by the ADA, 29 C.F.R. § 1630.2(*o*); *see Taylor v. Pepsi–Cola Co.*, 196 F.3d 1106, 1110 (10th Cir.1999) (an allowance of time for medical care or treatment may constitute a reasonable accommodation under the ADA); *Durant v. Chemical/Chase Bank/Manhattan Bank, N.A.*, No. 97 Civ. 1609(LAK), 1999 WL 1328001 (S.D.N.Y. Dec. 3, 1999) (holding that a leave of absence is a possible reasonable accommodation under the ADA), the courts have held that medical leave of indefinite duration is not a required reasonable accommodation. *See, e.g., Mitchell v. Washingtonville Central School Dist.*, 190 F.3d 1, 9 (2d Cir.1999) (holding that School Board was not required to grant plaintiff an indefinite leave of absence); *Taylor v. Pepsi–Cola*, 196 F.3d at 1110 (holding that indefinite period of medical leave is not a reasonable accommodation); *Watkins v. J & S Oil Co., Inc.*, 164 F.3d 55, 62 (1st Cir.1998) (holding that, where was no evidence as to when plaintiff would be able to return to work at the time his replacement was hired, the employer was not required to hold the plaintiff's job open indefinitely); *Nowak v. St. Rita High School*, 142 F.3d at 1004 ("The ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence."); *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1187–88 (6th Cir.1996) (same); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759–60 (5th Cir.1996) (same); *Hudson v. MCI Telecommunications, Corp.*, 87 F.3d 1167, 1169 (10th Cir.1996) (same). As the Fourth Circuit stated in *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995), "[n]othing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for

an accommodation to achieve its intended effect."

There is no evidence in the record that, at the time Steyer's status was changed from temporary to permanent, defendant had any indication of when plaintiff would be returning to work. Plaintiff had already been out of work eight and one-half months and was facing another surgery. Beale testified that the reason he made Steyer a permanent employee was because of the "uncertainty of Arlene['s] coming back." (Beale dep. at 67). He further testified that it was not until June, 1997, that he had any idea of when plaintiff would be able to return to work. (Beale dep. at 66). Thus, in March of 1997, even assuming that plaintiff requested additional unpaid leave as a reasonable accommodation, it would have been of indefinite duration. We agree with the cases cited above that this was not a reasonable accommodation required by the ADA, particularly given defendant's small size and the fact that defendant had already kept plaintiff's job open for eight and one-half months.

■ Therefore, we find that plaintiff has failed to meet her burden of establishing she was a "qualified individual with a disability" in March, 1997, since she has not shown that she was able to perform the essential functions of her job as a customer service representative with or without reasonable accommodation. Therefore, plaintiff has failed to meet her prima facie burden under the ADA, and summary judgment is appropriate in favor of defendant on this portion of her ADA claim.

*B. Was Plaintiff Regarded As Disabled in June of 1997*

■ Defendant next asserts that plaintiff was not disabled at the time she met with Beale in June, 1997, and received the part-time job offer and that, even if she was, defendant provided plaintiff with her requested accommodation, a part-time position. As discussed above, plaintiff's tes-

timony is inconsistent with her affidavit concerning whether she was physically disabled in June of 1997. *See* Note 2, *supra.* Even if we were to credit her affidavit testimony that she was substantially limited in her ability to lift, bend, and sit for prolonged periods of time, plaintiff has failed to produce any evidence that she was substantially limited in any major life activity. To the contrary, plaintiff's doctor had released her to work part-time as of May 12th, plaintiff thought that she would be able to return to full-time work in a short period of time, and plaintiff believed that she was physically capable of performing all of the functions of her former job on a part-time basis. Thus, we find that plaintiff has not established that she was physically disabled as that term is defined by the ADA. *See* 29 C.F.R. § 1630.2(j)(3)(i); *Colwell v. Suffolk County Police Dept.,* 158 F.3d 635, 643 (2d Cir. 1998); *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383–84 (2d Cir.1996).

In the alternative, plaintiff asserts that, even if she was no longer physically disabled, she still met the definition of "disability" under the ADA, 42 U.S.C. § 12102(2), because she was regarded by defendant as having an impairment that substantially limited her ability to work. Defendant argues that plaintiff cannot rely on this prong of the definition of "disability" because there is no evidence that defendant entertained any misperception about whether plaintiff had regained her ability and desire to return to work. Once plaintiff advised defendant that she was ready to return to work, defendant states that it attempted to accommodate that request.

▮ The ADA provides that having a disability includes "being regarded as having" a physical or mental impairment that substantially limits one or more of the major life activities of such individual. 42 U.S.C. § 12102(2)(C). There are two ways in which individuals may fall within this statutory definition: (1) an employer mis-

takenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *Sutton v. United Air Lines,* 119 S.Ct. at 2150. In both cases, it is necessary that the employer entertain misperceptions about the individual—it must believe either that the employee has a substantially limiting impairment that she does not have or that she has a substantially limiting impairment when, in fact, the impairment is not so limiting. *Id.*

Construing the facts in the light most favorable to plaintiff, one could infer that defendant at least questioned plaintiff's ability to perform her former job duties and, thus, offered her a position with less demanding responsibilities. There is also evidence that Anne Fox had expressed concern about plaintiff's ability to return to her former job. (However, there is no evidence that Fox had any input into the Beale's decision concerning the part-time job offered to plaintiff.) And, it could be inferred that these were *misperceptions* about plaintiff's physical ability to return to her former job. However, that alone does not satisfy the ADA's definition of "disability." "A plaintiff cannot state a claim under the 'regarded as' prong of the ADA ... simply by alleging that the employer believes some physical condition ... renders the plaintiff disabled." *Francis v. City of Meriden,* 129 F.3d 281, 285 (2d Cir.1997). Rather, the employer must regard the plaintiff as disabled *within the meaning of the ADA. Id.* at 285–86 (emphasis added).

▮ Plaintiff must show that defendant considered her as having an impairment that *substantially limited* a major life activity. In this case, the only major life activity that has been alluded to is working. To establish that defendant regarded her as substantially limited in her ability to work, plaintiff must show that the defendant regarded her as unable to

perform a wide range of jobs suitable for persons of her age, experience, and training. *See Colwell v. Suffolk County Police Dept.*, 158 F.3d at 647. This plaintiff has failed to do. To the contrary, plaintiff states that defendant offered her another position with many of her former job duties and responsibilities, although not all of them. According to plaintiff's interpretation of Beale's offer, she was to serve as back-up for the other customer service representatives. There is no evidence that defendant regarded plaintiff as unable to perform a wide range of jobs. *See Id.* (noting that defendant's assigning plaintiffs to light duty status did not mean that they were regarded as disabled); *Francis*, 129 F.3d at 286. Therefore, we find that plaintiff has failed to adduce evidence to satisfy the "regarded as" prong of the ADA's definition of disability.

Having found that plaintiff has failed to show that she was "disabled," we need not address defendant's final argument that it provided plaintiff with a reasonable accommodation.

Accordingly, we grant summary judgment in defendant's favor as to plaintiff's claim of disability discrimination relating to defendant's offering her a demotion in June, 1997.

### III.   *Negligent Misrepresentation*

Plaintiff's final claim is a state-law claim for negligent misrepresentation. The alleged misrepresentations at issue are the statements by Beale, after Steyer was hired, that plaintiff should not worry, her position would be held open for her upon her recovery and to just get better. Beale denies that he made these statements, but also states that he did, in fact, hold her job open.

Plaintiff has alleged that she relied upon these representations in foregoing other job opportunities but has produced no evidence of any such job opportunities. She further alleges that her reliance on defendant's negligent misrepresentations was to her detriment and that it caused her dam-

ages. Defendant argues that these representations were so vague, ambiguous and uncertain that no reasonable person would be justified in relying on them.

In our previous rulings on the motions to dismiss in this case, we discussed at length the elements of a cause of action for negligent misrepresentation. As we stated, for purposes of stating a cause of action for negligent misrepresentation, the representations do not need to be promissory; they only need to contain false information. *See D'Ulisse–Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 218, 520 A.2d 217 (1987) (finding that the plaintiff-teacher had stated a claim for negligent misrepresentation where she alleged that defendants made unconditional representations that she would be rehired the next year, when in fact they knew or should have known that their hiring plans were contingent upon student enrollments for the following year).

Although there are issues of material fact as to whether Beale even made the alleged representations, we must assume for purposes of this motion that he did represent to plaintiff that her job would be held open. There are also factual issues as to whether these were *mis*representations. From the facts of record, it appears that at least until Steyer was hired on a permanent basis, these representations (if made) were true. Plaintiff's job was held open. Additionally, there are factual issues as to whether Beale, at the time he made these statements, knew or reasonably should have known that they were false. Moreover, even assuming that Beale did in fact misrepresent that Howell Corporation was keeping plaintiff's job open, plaintiff was totally incapacitated until the beginning of May, 1997, and as of June 20, 1997, when plaintiff obtained a "pink slip," plaintiff could no longer rely on these misrepresentations.

Putting these issues aside, we need not reach the merits of defendant's summary

judgment motion because, having dismissed all of plaintiff's federal claims, we decline to exercise supplemental jurisdiction over this state-law tort claim. *See* 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). This one remaining claim is a matter that should more appropriately be addressed in State court. Therefore, count three of plaintiff's amended complaint is dismissed without prejudice to plaintiff's refiling it in State court.[9]

## CONCLUSION

For the reasons set forth above, the Court GRANTS defendant's motion for summary judgment as to counts one and two. Having granted summary judgment in favor of defendant on both of the federal claims, the Court declines to exercise supplemental jurisdiction as to plaintiff's state-law claim for negligent misrepresentation, and dismisses count three. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

---

**9.** To the extent that the state statute of limitations may have run on this claim, 28 U.S.C. § 1367(d) provides that the period of limitations is tolled while the claim is pending in federal district court and for thirty days thereafter, unless State law provides for a longer tolling period.