**Hyacinth Broderick SCOTT, Plaintiff,**

v.

**MEMORIAL SLOAN–KETTERING CANCER CENTER, Defendant.**

**No. 01 CIV. 7343(NRB).**

United States District Court, S.D. New York.

Feb. 28, 2002.

## MEMORANDUM & ORDER

BUCHWALD, District Judge.

Plaintiff, Hyacinth Broderick Scott ("plaintiff" or "Scott"), has sued defendant Memorial Sloan–Kettering Cancer Center ("defendant" or "Memorial"), alleging that defendant failed to make a reasonable accommodation for her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. She also claims that the defendant discriminated against her on the basis of her gender and race, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, and on the basis of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., by creating a hostile work environment and by firing her in retaliation for complaints she made about her supervisor. Defendant has moved for summary judgment on all claims. For the reasons discussed below, defendant's motion is granted.

## BACKGROUND

Plaintiff first began working for defendant in July 1984 as a secretary before being promoted in 1986 to senior administrative secretary and again in 1988 to administrative assistant. In 1990, plaintiff voluntarily resigned from Memorial but returned in 1995. She was promoted to Administrative Coordinator in 1998 and given a pay increase. Memorial reimbursed plaintiff for her full tuition and fees for the cost of completing a doctorate in healthcare education, which she attained in September 1999.[1]

This case has its genesis in an injury plaintiff suffered on September 2, 1999, while moving boxes. Plaintiff suffered an umbilical hernia for which she had surgery

---

1. The parties disagree about whether plaintiff's supervisor at Memorial, Doctor Joseph Bertino initiated plaintiff's rehiring or whether plaintiff called him to see if her former position was available. They also dispute details relating to Memorial's decision to reimburse plaintiff's full educational expenses (rather than the two semesters it ordinarily reimburses) and whether Dr. Bertino or plaintiff was the driving force behind her 1998 promotion and raise.

on October 1, 1999, and developed chronic lumbar syndrome. Plaintiff worked for most of September before her surgery, with the exception of four sick days. After her surgery, plaintiff took short-term disability leave through November 15, 1999. She maintained a reduced schedule until February 11, 2000. Between November 8 and February 11, plaintiff took two sick days and thirteen vacation days.

Plaintiff alleges that her November 15 return to work was contrary to her doctor's instruction and was prompted by Dr. Bertino's November 8 threat to fire her if she did not return by the 15th. She alleges that Dr. Bertino complained about her absences and threatened to fire her when she did not work a full day, all the while constantly pressing her to voluntarily resign. Plaintiff also alleges that, in November 1999, Dr. Bertino gave her a "Below Expectation" job evaluation, but that he changed it to "Clearly Outstanding" after plaintiff confronted him. In February 2000, after Dr. Bertino threatened to give her a negative reference, plaintiff reported him to the Employee Relations Department. Plaintiff also alleges that Dr. Bertino threatened to re-staff plaintiff's position as early as November 1999, with a younger white female. Memorial has stated that the staffing request filed in November, which was never filled, was for an "overlap" employee, not a replacement. Plaintiff's position was not actually filled until July 31, 2000, and then by a 47 year-old female.

On February 14, 2000, plaintiff went on short-term disability leave again because of severe back and leg pain. Memorial informed plaintiff on March 28, 2000, that she would reach the maximum 26 weeks of disability leave allowable in a 52 week period on June 30, 2000, and that plaintiff could apply for long-term disability benefits. Plaintiff applied for long-term disability benefits from defendant's provider, First UNUM Life Insurance Company on April 10, 2000. On that application, she stated that she was in excruciating pain but that she expected to return to work full-time on April 17, 2000. Plaintiff did return to work on that date, but she worked for only one week before going back onto short-term disability leave. On June 23, 2000, First UNUM denied plaintiff's application for long-term disability benefits because she had not demonstrated that she was totally disabled and unable to work. Plaintiff appealed the decision and, on June 23, 2000, informed Memorial that she was moving back to Florida on June 30, 2000, to continue her recovery.

Memorial states that its practice is to terminate employees who do not return to work upon the expiration of their short-term leave unless the employee requests some type of accommodation. This practice was not included in the March 28 letter sent to plaintiff.[2] On May 16, 2000, Memorial sent plaintiff a letter stating that her short-term disability benefits would expire on July 6, 2000.

When plaintiff's short-term disability benefits expired on July 6, 2000, Memorial administratively terminated plaintiff. On July 30, 2000, Memorial sent plaintiff a final check to account for her accumulated vacation days. On August 4, 2000, First UNUM informed Memorial that it had denied plaintiff's request for long-term benefits, but plaintiff declined to permit the insurance company to provide the details of its denial to Memorial.

---

**2.** Plaintiff alleges that she was never told of this policy and that, on April 26, 2000, someone from defendant's Employee Relations department told her that she had up to one year in which to return to her job.

On September 1, 2000, Memorial sent plaintiff a letter reiterating that her employment had been terminated as of July 6, 2000, and that it was discontinuing plaintiff's medical, prescription, and dental benefits because plaintiff had been denied long-term disability benefits. This letter was sent to 7606 Harbour Boulevard, rather plaintiff's proper address, which was 7607 Harbour Boulevard. Plaintiff claims never to have received this letter. On September 18, 2000, plaintiff sent a letter to Memorial requesting that defendants provide a reasonable accommodation for her disability under the ADA, although she did not suggest any particular accommodation. On October 4, 2000, Memorial sent plaintiff a fax stating that she had been terminated as of July 6, 2000.

Plaintiff filed her complaint in this action on August 8, 2001. At an initial pretrial conference held on October 5, 2001, plaintiff's counsel revealed that plaintiff had been unable to work since she was terminated and had only begun to look for a new job in the last three to four months, beginning approximately in June or July of 2001. Based on the state of the record at the time of the conference, defendant made this motion for summary judgment on all of plaintiff's claims.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is properly granted where the " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' " *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997) (quoting Fed.R.Civ.P. 56(c)). The court may not make any credibility determinations or weigh the evidence and must make all reasonable inferences in

favor of the non-moving party. *Lytle v. Household Mfg. Inc.,* 494 U.S. 545, 554–55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990). The Federal Rules of Civil Procedure mandate the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing the record, we are required to assess the evidence "in the light most favorable to the non-movant and ... draw all reasonable inferences in [the non-movant's] favor." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990). The mere existence, however, of an alleged factual dispute between the parties will not defeat a motion for summary judgment. In order to defeat such a motion, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505 (internal quotation omitted).

Summary judgment is appropriate in discrimination cases, notwithstanding their fact-intensive nature. *Abdu–Brisson v. Delta Air Lines,* 239 F.3d 456, 465 (2d Cir.2001). In fact, the Supreme Court has explicitly stated that "trial courts should not 'treat discrimination cases differently from other ultimate questions of fact.' " *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Courts should grant summary judgment

where there is a valid, nondiscriminatory reason for the termination or if the plaintiff has only created a weak issue of fact and there is abundant evidence of a lack of discrimination. *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097.[3]

The moving party bears the initial burden of production in a summary judgment motion, which it can meet by producing affidavits, pleadings, depositions, admissions on file, and answers to interrogatories demonstrating that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). According to Local Rule 56.1 for the Southern District of New York, the moving party is also required to submit a statement of undisputed facts. After the moving party has met its burden of production, the burden shifts to the opposing party. The non-moving party must oppose the motion by citing specific facts, supported by evidence, affidavits, interrogatories, or other sworn documents, that articulate specific issues of fact requiring trial. It cannot rely on the pleadings alone. *See First Nat'l Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Park Ave. Tower Assoc. v. City of New York,* 746 F.2d 135, 141 (2d Cir.1984); Moore's Fed. Prac.3d § 56.13[4]. Furthermore, under Local Rule 56.1(b), the non-moving party is required to submit a statement of the material facts it disputes in the moving party's 56.1 statement. Any facts not opposed will be deemed admitted. Local Rule 56.1(c).

## II. Plaintiff's Failure to File Local Rule 56.1 Statement, Affidavits, or Other Supporting Evidence

At the outset, we note several deficiencies in plaintiff's submission; plaintiff failed to file any affidavits or sworn statements in opposition to the motion, nor has she filed a 56.1 statement. These omissions were specifically pointed out in defendant's reply brief. Def. Reply, at 1. We can only assume that plaintiff's counsel read the reply brief, noticed that defendant had pointed out her oversight, and affirmatively chose not to make any attempt at a further filing. Plaintiff also chose not to request additional discovery under Rule 56(f), which she could have done if she thought defendant's summary judgment motion premature. Accordingly, we cannot view the allegations set forth in plaintiff's complaint as evidence to be considered on summary judgment. The fact that plaintiff has not filed any affidavits does not mean that defendant automatically prevails. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (holding that if the party moving for summary judgment fails to meet its burden, summary judgment will be denied even if the non-moving party fails to respond). Most importantly, however, even if the plaintiff had filed affidavits attesting to the facts she alleged in her complaint and motion papers, there would still be no genuine issues of material fact in this case.

## III. Reasonable Accommodation Claim

■ Plaintiff's claim for an accommodation fails because she had already been terminated before she requested the accommodation at issue in this case, and therefore she was not a qualified individual under the ADA. *See* 42 U.S.C. § 12112(a) (prohibiting discrimination against any

---

**3.** While the Supreme Court's ruling in *Swierkiewicz v. Sorema N.A.,* —— U.S. ——, 122 S.Ct. 992, 999, —— L.Ed.2d —— (2002), overruled the Second Circuit's heightened pleading standard for Title VII cases, we note here that although discovery has not been conducted in this case, defendant has moved for summary judgment. *Swierkiewicz,* therefore, is inapplicable to this motion.

qualified individual) and 42 U.S.C. 12112(b)(5)(A)(defining the term "discriminate" as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability *who is an applicant or employee* ...") (emphasis added). While there is no dispute that defendant administratively terminated plaintiff effective July 6, 2000, plaintiff maintains that she did not know she had been terminated before she sent the September 18, 2000, letter requesting an accommodation under the ADA. Plaintiff's protestations of ignorance are difficult to accept in light of the fact that she received a final paycheck, which included her accumulated vacation time.[4] In any event, there is no support for the proposition that plaintiff's failure to receive notice extends her employee status for purposes of the ADA.[5] As the ADA only applies to employees, plaintiff cannot make out a prima facie case under the statute. *See Whalley v. Reliance Group Holdings,* 2001 WL 55726, at \*8 (S.D.N.Y. Jan.22, 2001) (holding that a request for an accommodation must be made prior to termination).

Even if plaintiff were an employee covered by the ADA at the time she requested the accommodation, summary judgment would still be awarded to the defendant because plaintiff's submission is insufficient to sustain her burden of establishing a prima facie case. In order to make out a prima facie claim under the Americans with Disabilities Act, a plaintiff must meet a four factor test: 1) plaintiff has a disability within the meaning of the ADA; 2) the employer had notice of the disability; 3) the employee could perform the essential functions of her job with a reasonable accommodation; and 4) the employer refused to make an accommodation. *Parker v. Columbia Pictures Industries,* 204 F.3d 326, 332 (2d Cir.2000).

The requirement of establishing a prima facie case is not an onerous one. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203–04 (2d Cir.1995). For the purposes of this motion, defendant has conceded that plaintiff has a disability under the ADA and that it knew about plaintiff's condition. Nonetheless, plaintiff fails to make out a prima facie case, because she has not demonstrated a genuine issue of material fact to support a conclusion that she can perform the essential functions of her position with a reasonable accommodation. *See Borkowski v. Valley Central School Dist.,* 63 F.3d 131, 138 (2d Cir.1995) (stating that "[i]t follows that the plaintiff bears the burden of proving either that she can meet the requirements of the job without assistance, or that an accommodation exists that permits her to perform the job's essential functions.")[6]

---

**4.** We accept, for the purpose of this motion, plaintiff's assertion that she never received the September 1 letter because it was sent to the wrong address. However, whether plaintiff ever actually received that letter is immaterial to whether she had been terminated.

**5.** While there could be circumstances in which an employee's termination might be viewed as a deliberate effort on the part of the employer to thwart the employee's rights under the ADA, there is no basis for such a conclusion here. Plaintiff was previously accommodated and provided short-term disability benefits as well as the opportunity to apply for long-term benefits.

**6.** We are well aware that plaintiff does not bear the initial burden of proposing a specific accommodation at the time of the request. *See* 29 C.F.R. § 1630.2(*o*)(3) (stating that the employer has an obligation to work with the employee through an interactive process to devise a reasonable accommodation that does not create a hardship for the employer). However, the plaintiff bears the burden of persuading the finder of fact that the proposed accommodation would effectively per-

■ In her complaint and motion papers, plaintiff suggests three accommodations that she claims would have permitted her to perform the essential functions of her position. Plaintiff's assertion in her complaint that an accommodation of periodic breaks, supportive chairs, a back brace, and physical therapy would enable her to perform her job, Complaint, ¶ 8, is not supported by her submissions in this motion and is belied by her counsel's admission at the October 5, 2001, conference that she had still not returned to work and had only commenced seeking employment within the previous three to four months.

■ The second of plaintiff's proposed accommodations does not withstand legal or practical analysis. In her opposition brief, plaintiff suggests that she could perform many of the essential functions of her position as Administrative Coordinator directly from her home in Florida or New York. Pl. Opposition at 12, n. 2. This suggestion of remote management goes beyond any sensible concept of a reasonable accommodation. *See Barnett v. Revere Smelting*, 67 F.Supp.2d 378, 391 (S.D.N.Y. 1999) (holding that regular office attendance is usually a necessary component of a reasonable accommodation); *Baker v. City of New York*, 1999 WL 33115, at *4 (E.D.N.Y. Jan.22, 1999) (stating that regular attendance is a fundamental element of employment).

■ Finally, plaintiff suggests in her answering memorandum that an additional period of leave would have been a reasonable accommodation to permit her to return to work. Apart from the fact that plaintiff never requested such a leave, plaintiff's argument ignores the fact that she had exhausted the benefits of the hospital's short-term disability leave. Thus, plaintiff is either asking for an extended paid leave of absence or asking the hospital to hold her job open indefinitely. The ADA clearly does not require employers to hold positions open indefinitely as an accommodation to disabled employees. *Parker*, 204 F.3d at 338. *See also Cousins v. Howell Corp.*, 113 F.Supp.2d 262, 270 (D.Conn.2000) (holding that summary judgment for defendant was appropriate where employer had held job open for disabled employee for 8½ months) (collecting cases). It follows that if an employer cannot be required to hold a job open for an employee, it cannot be required to provide that employee with paid leave.

Plaintiff here was terminated as part of a company policy. Furthermore, she also admitted that she was in "constant pain," that her condition was deteriorating, and that it was "impossible" to return to work "at this time" when she wrote to First UNUM Life Insurance Company, defendant's long-term disability benefits provider, on June 23, 2000. Donoghue Aff., Ex. J. Thus, two weeks before she was terminated, and almost nine months after she was injured, plaintiff admitted that she was still unable to return to work. *See Bril v. Dean Witter*, 986 F.Supp. 171, 175 (S.D.N.Y.1997) (holding that plaintiff who had admitted that she was totally disabled at the time her benefits were discontinued could not sue under the ADA).[7]

mit plaintiff to perform the essential functions of her job.

**7.** Plaintiff also argues that Memorial has not demonstrated that plaintiff would not have been able to return to work if defendant had extended her leave, and that therefore defendant is not entitled to summary judgment. *See Durrant v. Chemical/Chase Bank/Manhat-* *tan*, 81 F.Supp.2d 518, 521–22 (S.D.N.Y. 2000). But *Durrant* does not stand for the proposition that no defendant can obtain summary judgment if the plaintiff claims that additional leave would have been sufficient to allow a return to work. Instead, the decision seems to be narrowly tailored to give the benefit of the doubt on a motion for summary

Even assuming, arguendo, that Scott had made a prima facie showing of discrimination under the ADA, the burden shifts to the defendant to articulate a lawful, non-discriminatory basis for the hiring. *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant can make such a showing, the burden shifts back to the plaintiff to show that the reason proffered by the defendant is pretextual and that there was intentional discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 516, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir.1999).

■ We have examined each of the arguments plaintiff advances in support of her claim of pretext and find all of them wanting. Because this discussion is at the third level of analysis, we will simply summarize our conclusions. First, plaintiff has made no showing by affidavit that the administrative termination policy was not applied uniformly, or that she was told that she would have up to one year in which to return to work. Second, plaintiff complains about various comments made by her supervisor concerning her returning to work. Not only did her supervisor not hire a replacement for plaintiff until after she had been administratively terminated, but he was not the decision-maker with respect to her termination. *See Ellis v. Provident Life & Accident Ins. Co.*, 926 F.Supp. 417, 428 (S.D.N.Y.1996); *Wado v. Xerox Corp.*, 991 F.Supp. 174, 212 (W.D.N.Y.1998), *aff'd sub. nom.*, *Smith v. Xerox Corp.*, 196 F.3d 358 (2d Cir.1999).

In sum, Scott has failed to show that she was a "qualified individual" under the ADA because she had already been terminated by Memorial at the time she requested an accommodation. Even assuming that plaintiff was protected by the ADA, she has not set forth a prima facie case because she failed to present any evidence that there was an accommodation that would enable her to perform the essential functions of her position. Finally, she has not produced any evidence to suggest that Memorial's decision to administratively terminate her was a pretext for actual discriminatory intent. Therefore, plaintiff's claim that Memorial failed to make a reasonable accommodation for her disability fails as a matter of law, and summary judgment is granted for defendant on that claim.

## IV. Hostile Work Environment Claims

■ Plaintiff's complaint also alleges that Memorial discriminated against her on the basis of her age in violation of the ADEA and her race and gender in violation of Title VII by creating a hostile working environment. While plaintiff never actually included a hostile working environment under the ADA in her laundry list of discrimination claims contained in the complaint, she does argue the issue in her papers. We will, therefore, address the merits of this claim as well.

Under Title VII, an employee seeking to bring a hostile work environment claim must satisfy a four factor test: 1) that plaintiff is a member of a protected class; 2) that plaintiff suffered unwelcome harassment; 3) that plaintiff was harassed because of her membership in a protected class; and 4) that the harassment was sufficiently severe or pervasive to alter the

judgment to a pro se plaintiff whose employer terminated her medical leave after it found

out that she had mental health problems.

conditions of employment and create an abusive work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995). *See also Cosgrove v. Sears*, 9 F.3d 1033, 1042 (2d Cir.1993) (stating that plaintiff bringing Title VII hostile work environment claim had to show that the harassment she suffered was because of her gender). Courts have held that hostile work environment claims under ADA and ADEA are evaluated under the same standards as Title VII claims. *See Brennan v. Metropolitan Opera Assn., Inc.*, 192 F.3d 310, 316–17 (2d Cir.1999) (ADEA); *Disanto v. McGraw–Hill, Inc./Platt's Div.*, 1998 WL 474136, at *5 (S.D.N.Y. Aug.10, 1998) (ADA). The defendant concedes that plaintiff is a member of the protected classes she alleges.

The standard for a hostile work environment claim is a demanding one. The plaintiff must prove that the conduct was offensive, pervasive, and continuous enough to amount to a constructive discharge. *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62–63 (2d Cir.1992). The Supreme Court has stated that Title VII is not intended to create a code of civility. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Among the factors to be considered in determining whether conduct is sufficiently hostile under the totality of the circumstances are: frequency; severity; whether the conduct is physically threatening or humiliating; and whether it interferes with an employee's performance. *Harris*, 510 U.S. at 23, 114 S.Ct. 367. Plaintiff complains about occasional statements and has made no showing that they were routine rather or severe. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir.1998). In the latter regard, the Second Circuit has made it clear that insensitive comments

are not per se unlawful. *Williams v. County of Westchester*, 171 F.3d 98, 101 (2d Cir.1999). There is no evidence in the record of any physical threats or humiliation. Similarly, plaintiff cannot argue that Dr. Bertino hindered her work performance by insisting that she come to work. Finally, we think it important that the comments complained about by plaintiff were made in the context of her supervisor asking her whether she would return to work or not, and, if she was not going to return, when she would resign. We do not think it unreasonable for an employer to ask when an employee will be able to perform her job. *Cf. Harris v. Home Savings Assn.*, 730 F.Supp. 298, 307 (W.D.Mo.1989) (holding that it is part of the normal course of business for an employer to ask an employee when she plans to return to work). Even if the plaintiff thought that the question of whether she would work full-time or resign was asked too often and that Dr. Bertino expressed unhappiness with her reduced capacity to work, she has not demonstrated that the workplace was so "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" as to constitute a hostile working environment. *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (internal citations omitted).

Plaintiff has not even alleged that anyone at Memorial made comments related to her age, gender, or race at any time. Therefore, she could not possibly base a hostile work environment claim on Title VII or ADEA. As Dr. Bertino's comments about her disabled status did not reach the demanding levels of conduct set out in the case law, plaintiff cannot prove a claim under the ADA for a hostile work environment. Accordingly, defendant's motion for summary judgment on plaintiff's hostile work environment claims is granted.

## V. Retaliatory Dismissal Claim

■ Although not specifically plead in her complaint, plaintiff also suggests in her papers that her job was threatened and that she was ultimately fired in retaliation for her complaints about Dr. Bertino. Complaint, ¶ 26. The Second Circuit has held that, in order to establish a prima facie case for an adverse employment action, a plaintiff must show that the action occurred under circumstances creating an inference that the discrimination was based on the plaintiff's membership in a particular class. *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir.1997). Plaintiff has established no causal connection between her complaint and Dr. Bertino's statements. The timing of plaintiff's undermines her claims. She made her statements about Dr. Bertino in February but was not dismissed until July. In fact, as discussed in Part III of this opinion, plaintiff has failed to present any evidence that rebuts Memorial's argument that Scott was administratively terminated. Furthermore, defendants have shown that Dr. Bertino, whose actions are in question, was not a decisionmaker in the termination, so he could not have fired her in retaliation for her complaints about him. Therefore, plaintiff's retaliatory dismissal claim also fails.

### CONCLUSION

As plaintiff has failed to make out a case on any of her claims, whether plead in the complaint or not, defendant's motion for summary judgment is granted. The Clerk of the Court is respectfully directed to close this case.

**IT IS SO ORDERED.**